UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
ANEL MARTINEZ,

            Plaintiff,

    - against -

MBIA INC.,

            Defendant.
----------------------------------------------------------------------x

**COMPLAINT**

Civil Action No.
07 Civ. 2141 (HB)(RLE)
ECF Case

JURY TRIAL
REQUESTED

        Plaintiff ANEL MARTINEZ, by and through her attorney, Margaret McIntyre, Attorney at Law, as and for her Complaint, alleges the following:

### INTRODUCTION

        1.      This is an action for injunctive and declaratory relief, back pay, front pay, compensatory and punitive damages, attorneys' fees, costs and other relief to redress employment discrimination on the basis of race, color and sex, as well as for retaliation for plaintiff's opposition to discriminatory practices. This action is brought pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1871, 42 U.S.C. §1981; and the New York State Executive Law, §290 *et seq.*

### JURISDICTION AND VENUE

        2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). In addition, plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a).

        3.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged below were committed within this district.

## PARTIES

4. Plaintiff ANEL MARTINEZ ("plaintiff"), who is a Latina woman, is a resident of the State and City of New York and the County of New York.

5. Defendant MBIA INC. ("defendant") is, upon information and belief, a for-profit corporation authorized to do business in the State of New York and is engaged in the provision of specialized financial services to public finance and structured finance clients. Defendant maintains its offices at 113 King Street, Armonk, New York 10504.

6. Defendant employs approximately 600 employees and is therefore an employer within the meaning of 42 U.S.C. § 2000e-(b) and of §292(5) of the New York State Executive Law.

## ADMINISTRATIVE HISTORY

7. Plaintiff filed a charge of employment discrimination against defendant based on race, color and sex with the United States Equal Opportunity Employment Commission (hereinafter "EEOC") on or about November 2, 2005, which was within 300 days of the last incident of discrimination.

8. On or about May 24, 2006, plaintiff filed a second charge with the EEOC to add a claim of retaliation against her for filing her charge of discrimination.

9. On or about December 13, 2006, the EEOC issued plaintiff a Notice of Right to Sue. This complaint has been filed within 90 days of plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTS

10. Plaintiff was employed by defendant employed by defendant from October 8, 2001 until July 14, 2006.

11. At all relevant times herein, plaintiff was qualified to perform the positions she held as well as the positions for which she sought promotion while employed by defendant.

12. Plaintiff was employed by defendant as a temporary employee in or about January 2000 for several weeks, and then again starting in July 2001. On October 8, 2001, plaintiff became a permanent, full-time employee in the position of Administrator in defendant's Collateralized Debt Obligations unit within the Structured Finance IPM Department. In that capacity, plaintiff provided administrative support to approximately 11 financial professionals as well as to her direct supervisor, Amy Mauer-Litos, Managing Director. Plaintiff's starting salary was $38,000 per year.

13. In or about late 2002, plaintiff asked her supervisor, Ms. Mauer-Litos, whether she could be promoted to Senior Administrator. Ms. Mauer-Litos told plaintiff that she had inquired about a promotion for plaintiff, but that a promotion was not available because plaintiff had been in her current position for less than two years.

14. Upon information and belief, Caucasian Administrators employed by defendant have received promotions after being in their positions for only one year.

15. In or about late 2002, Amy Mauer-Litos also told plaintiff that if she were authorized to add another Associate position to her department, she would promote plaintiff to the position of Associate, but she could not.

16. From the time plaintiff started working for defendant, she was performing many of the same tasks that Associates perform, such as retrieving and managing trustee reports. Associates earn significantly greater salaries than Administrators.

*Discriminatory Failure to Promote*

17. At the end of 2004, Amy Mauer-Litos prepared an evaluation of plaintiff's performance which rated plaintiff's performance as Very Good. Ms. Mauer-Litos also put in a written request that plaintiff be promoted to Senior Administrator, based on the fact that plaintiff was already performing above the level of Administrator.

18. In or about December 2004, Amy Mauer-Litos was transferred to another department, and the department in which plaintiff remained as Administrator, the Structured Finance IPM Group, was doubled in size. As a result of the expansion, plaintiff was required to provide administrative support to 30 professionals, which effectively doubled her workload.

19. In or about December 2004, John Lilly, Managing Director, became plaintiff's direct supervisor.

20. Before plaintiff's 2004 performance evaluation was finalized, officials of defendant who were not familiar with plaintiff's work insisted that her evaluation be downgraded to Good, a drop of two ratings from the Very Good recommended by plaintiff's supervisor.

21. Upon information and belief, John Lilly was one of the officials of defendant who downgraded plaintiff's 2004 performance evaluation despite having no direct knowledge of plaintiff's work performance.

22. Upon information and belief, John Lilly was one of the officials who decided that plaintiff would not be promoted, as Amy Mauer-Litos had recommended.

23. Upon information and belief, the denial of plaintiff's promotion was motivated by discrimination against her because plaintiff is a Latina woman.

4

24. Upon information and belief, plaintiff was the only employee that Amy Mauer-Litos recommended for promotion whose promotion was denied. The other two employees Ms. Mauer-Litos recommended for promotion in late 2004, who were Caucasian men, were promoted.

25. During plaintiff's employment with defendant, Caucasian Administrators who were less experienced than plaintiff were promoted to positions of Senior Administrator or above, while plaintiff was not promoted.

26. Defendant has engaged in a pattern or practice whereby when a Latina or African-American Administrator has expressed an interest in promotion, she has been given a heavier administrative workload rather than a promotion.

27. Upon information and belief, among all employees of defendant, it takes significantly longer for Latino and African-American employees to be promoted than it takes for similarly situated Caucasian employees to be promoted.

28. During plaintiff's employment with defendant, male Administrators who were less experienced than plaintiff were promoted to positions of Senior Administrator or above, while plaintiff was not promoted.

29. In or about July 2005, John Lilly issued a mid-year review of plaintiff's performance, which he deemed to be merely "acceptable." In his comments, Mr. Lilly suggested plaintiff reach out to members of each of the four teams in our group to find out ways she could help them. Mr. Lilly's comment showed no recognition of the enormous amount of work that plaintiff was doing, the extent to which plaintiff was already trying to be a "team member" and the tremendous effort plaintiff was making to complete the work assigned to her.

30. Upon information and belief, plaintiff's mid-year review was designed to lay the groundwork for another annual review that would rate plaintiff as no better than "Good."

31. Upon information and belief, the negative evaluation of plaintiff's performance was part of an effort to pressure plaintiff to resign if she was unhappy with consistently being passed over for promotion no matter how hard she worked.

32. Upon information and belief, defendant's discriminatory treatment of plaintiff is part of a pattern or practice of denying promotions to its African-American and Latino employees while granting promotions to similarly situated non-African-American and non-Latino employees.

33. Upon information and belief, African-American and Latino employees make up a very small percentage of the employees hired by defendant and very few of those African-American and Latino employees are promoted to high level positions within the company.

34. In or about mid-summer 2005, plaintiff told John Lilly that she was upset that she had not been promoted. Mr. Lilly said that he could not talk about plaintiff's past experiences with Amy Mauer-Litos. Upon information and belief, Mr. Lilly's response was intended to disguise his own role in denying plaintiff a promotion and was also intended to convey to plaintiff that she would not be recognized for her past accomplishments.

*Disparate Pay and Workload*

35. Upon information and belief, male Administrators are routinely paid higher salaries than the salaries paid to similarly situated female Administrators employed by defendant.

36. Upon information and belief, several Caucasian Administrators were paid more than plaintiff was paid by defendant, even though plaintiff's workload was greater than theirs.

37. Upon information and belief, Caucasian Administrators employed by defendant are routinely required to do lesser amounts of work than similarly situated Latina and African-American Administrators employed by defendant.

38. Upon information and belief, defendant's discriminatory treatment of plaintiff was part of a pattern or practice of paying its African-American and Latino employees lower salaries than the salaries paid to similarly situated non-African-American and non-Latino employees.

*Retaliation and Harassment After Plaintiff Filed EEOC Charge*

39. After plaintiff filed her charge of discrimination with the EEOC in November 2005, defendant subjected plaintiff to a hostile work environment. Her work and attendance record was subjected to excessive scrutiny and she was falsely accused of failing to perform her job.

40. For example, John Lilly accused plaintiff of being away from her desk too often, which he claimed made plaintiff inaccessible. He required plaintiff to leave a post-it note on her desk, to indicate her whereabouts, every time she walked away from her desk. Plaintiff's responsibilities rarely took her far from her desk, and the time she had to spend writing post-it notes, when she was always easily located. On one occasion, plaintiff forgot to write a note when she stepped away from her desk, and John Lilly mentioned it to her in an e-mail.

41. Before plaintiff filed her charge of discrimination with the EEOC, plaintiff had not been required to leave a note on her desk whenever she walked away from it. The other Administrators who worked in proximity to plaintiff were not required to leave notes every time they stepped away from their desks. Upon information and belief, no other Administrator employed by defendant was required to leave such notes on their desks.

42. It was customary for the Administrators employed by defendant to fill in for each other when someone else was on vacation or out sick. In January 2006, plaintiff was out sick one day and when she mentioned to John Lilly that Ana Hernandez and Laura Tirado would be covering for her, he wrote plaintiff back an e-mail saying that he was concerned about the extra work they would

7

have. Upon information and belief, Mr. Lilly's expression of concern for the other Administrators' workload was intended to belittle plaintiff's legitimate complaint that she had an unfairly heavy workload.

43. John Lilly told plaintiff that she had taken too many sick days in 2005. He also said that her taking sick days and occasionally using a single vacation day gave the impression that she was not available. Plaintiff used five sick days in early 2005 because she had surgery and her disability payments did not cover the first week that she was out, so she had to use those as sick days. Plaintiff did not even use all of her allotted sick days for 2005.

44. On or about February 17, 2006, plaintiff was issued a formal evaluation of her performance for calendar year 2005 by John Lilly. Plaintiff's overall performance was rated as Good. Plaintiff's performance was much better than her rating indicated.

45. In his comments on plaintiff's 2005 performance evaluation, John Lilly claimed that plaintiff was "inconsistent" about performing her duties and claimed that the employees of the department often found plaintiff "unavailable." In fact, plaintiff was constantly busy providing support to the professionals in her group.

46. In the evaluation, John Lilly also criticized plaintiff for not going out of her way to solicit assignments and for not attending more team meetings, where she could volunteer to help team members in more ways. Mr. Lilly made that comment with knowledge that plaintiff had more work than other Administrators and was overwhelmed with keeping up with the work assigned to her.

47. On February 27, 2006, John Lilly told plaintiff that her time-sheets for January were incorrect in that he claimed plaintiff was out of the office on January 18, 2006. Plaintiff had to insist that Mr. Lilly review the attendance records before he admitted that plaintiff had worked that day.

48. In late February or early March 2006, plaintiff met with John Lilly to discuss her raise based on her 2005 performance. Mr. Lilly informed plaintiff that she would receive a raise of $2,500 per year for 2006, increasing her salary from $42,500 to $45,000. Plaintiff's performance merited a larger salary increase than she was awarded.

49. On March 1, 2006, the promotions for the IPM Division were announced. Once again, plaintiff was denied promotion.

50. On March 1, 2006, Caucasian Administrators who were similarly situated to plaintiff were promoted.

51. In or about late March 2006, plaintiff met with Felicia Ivey, of defendant's Human Resources Department, to complain that she had been retaliated against by being given a lower performance rating than she deserved, which resulted in her not being promoted again. Plaintiff also complained that her workload was excessive and some of the officials to whom she reported treated her with hostility and accused her of not giving enough priority to the requests that they made of her.

52. On or about April 21, 2006, Felicia Ivey angrily informed plaintiff that she had investigated plaintiff's complaint and that "everyone" had told her that plaintiff didn't have much work to do. Ms. Ivey later conceded that she had not spoken to everyone in the department. Nonetheless, she disparagingly said that she did not know how plaintiff filled thirty-five hours in a week.

53. Felicia Ivey also told plaintiff that she had pulled plaintiff's attendance records, that plaintiff's attendance record was atrocious and that plaintiff had missed three weeks of work in the first quarter of 2006. Plaintiff had not exceeded the sick time available to her in the first quarter of 2006. She had used some sick days and also used vacation time during that period.

54. On one of the occasions that plaintiff met with Felicia Ivey to discuss her complaints, plaintiff became so upset that she was sick to her stomach after the meeting.

55. Felicia Ivey denied that plaintiff was being treated with hostility.

56. Felicia Ivey never responded to plaintiff's complaint that she was unfairly rated and passed over for promotion again.

57. In or about early May 2006, plaintiff was transferred to work in a dusty file room to work on a month-long filing project, even though officials of defendant were aware that plaintiff suffered from asthma.

58. While plaintiff was assigned to work in the file room, a temporary employee was hired to sit at plaintiff's desk. Upon information and belief, defendant deliberately withheld work from the temporary employee in order to give the impression to that employee that plaintiff had a light workload.  Upon information and belief, several officials of defendant made disparaging innuendo about plaintiff to the temporary employee.

59. On May 18, 2006, plaintiff was issued a written warning on the basis of several false allegations against made against her.  The warning strongly suggested that plaintiff would be receiving a negative mid-year evaluation of her work performance.

60. Defendant made amply clear to plaintiff that it would not correct the discriminatory and retaliatory treatment to which plaintiff was subjected.

61. From the fall of 2005 until the summer of 2006, plaintiff was treated by doctors for stress and anxiety she was experiencing because of the hostility in her workplace.  By the summer of 2006, plaintiff had used all of the sick and personal time allotted to her

62. Following the advice of her doctors, on July 10, 2006, plaintiff tendered her resignation from her employment, effective July 21, 2006.  At defendant's insistence, plaintiff's last day of employment was July 14, 2006.

63. Plaintiff was constructively discharged.

64. Based on the foregoing, plaintiff charges defendants with discriminating against her in the terms, conditions and privileges of employment, on the basis of her race, color and gender and retaliating against her for her complaints of discrimination.

### AS AND FOR A FIRST CAUSE OF ACTION

65. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 64 of this complaint as if fully set forth herein.

66. Defendant's acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of her race, color and gender, in violation of 42 U.S.C. § 2000e *et seq.*

### AS AND FOR A SECOND CAUSE OF ACTION

67. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 66 of this complaint as if fully set forth herein.

68. Defendant's acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of her race, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981.

### AS AND FOR A THIRD CAUSE OF ACTION

69. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 68 of this complaint as if fully set forth herein.

70. Defendant's acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of her race, color and gender, in violation of the New York State Executive Law, §290 *et seq.*

## AS AND FOR A FOURTH CAUSE OF ACTION

71.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 70 of this complaint as if fully set forth herein.

72.     Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff for her complaints of race and gender discrimination, in violation of in violation of 42 U.S.C. § 2000e *et seq.*

## AS AND FOR A FIFTH CAUSE OF ACTION

73.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 72 of this complaint as if fully set forth herein.

74.     Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff for her complaints of race discrimination, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981.

## AS AND FOR A SIXTH CAUSE OF ACTION

75.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 74 of this complaint as if fully set forth herein.

76.     Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff for her complaints of race and gender discrimination, in violation of the New York State Executive Law, §290 *et seq.*

## AS AND FOR A SEVENTH CAUSE OF ACTION

77.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 76 of this complaint as if fully set forth herein.

78.     Defendant subjected plaintiff to a hostile work environment on the basis of her race, color and gender, and in retaliation for her complaints of discrimination, in violation of in violation of 42 U.S.C. § 2000e *et seq*.  Plaintiff alleges a continuing violation on this claim.

### AS AND FOR A EIGHTH CAUSE OF ACTION

79.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 78 of this complaint as if fully set forth herein.

80.     Defendant subjected plaintiff to a hostile work environment on the basis of her race and color, and in retaliation for her complaints of discrimination, in violation of in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981. Plaintiff alleges a continuing violation on this claim.

### AS AND FOR A NINTH CAUSE OF ACTION

81.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 81 of this complaint as if fully set forth herein.

82.     Defendant subjected plaintiff to a hostile work environment on the basis of her race, gender and color, and in retaliation for her complaints of discrimination, in violation of the New York State Executive Law, §290 *et seq*.  Plaintiff alleges a continuing violation on this claim.

### DEMAND FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

1.      Declare, adjudge and decree that defendant discriminated against plaintiff in violation of 42 U.S.C. § 2000e *et seq*.

2.      Declare, adjudge and decree that defendant discriminated against plaintiff in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981.

3.  Declare, adjudge and decree that defendant discriminated against plaintiff in violation of the New York State Executive Law, §290 *et seq.*

4.  Declare, adjudge and decree that defendant retaliated against plaintiff in violation of 42 U.S.C. § 2000e *et seq.*

5.  Declare, adjudge and decree that defendant retaliated against plaintiff in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981.

6.  Declare, adjudge and decree that defendant retaliated against plaintiff in violation of the New York State Executive Law, §290 *et seq.*

7.  Declare, adjudge and decree that defendant subjected plaintiff to a hostile work environment in violation of 42 U.S.C. § 2000e *et seq.*

8.  Declare, adjudge and decree that defendant subjected plaintiff to a hostile work environment in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981.

9.  Declare, adjudge and decree that defendant subjected plaintiff to a hostile work environment in violation of the New York State Executive Law, §290 *et seq.*

10.  Order defendant to pay plaintiff damages in the amount equal to the value of all back pay, plus interest thereon, that plaintiff lost as a result of defendant's discriminatory and retaliatory actions.

11.  Order defendant to reinstate plaintiff in employment, with full seniority and all other benefits; or, in the alternative, award plaintiff front pay.

12.  Enjoin defendant from engaging in further discriminatory or retaliatory actions against plaintiff.

13. Award plaintiff compensatory and punitive damages.

14. Award plaintiff all costs and reasonable attorney's fees incurred in connection with this action.

15. Award such other and further relief as this Court may deem just and proper.

Dated:   March 13, 2007
         New York, New York

                                        /S
                              MARGARET McINTYRE (MM 2099)
                              Attorney for Plaintiff
                              225 Broadway, Suite 2515
                              New York, New York 10007
                              (212) 227-9987